# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CRIMINAL ACTION NO. 5:16-CR-00005-KDB-DCK-1

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| CHRISTOPHER CHARLES BALDWIN, | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant Christopher Charles Baldwin's *pro se* Motion to Reconsider Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. (Doc. No. 37). The Government opposes the motion. For the reasons explained below, the Court will deny Defendant's motion.

## I. BACKGROUND

On March 23, 2016, Defendant pled guilty to conspiracy to distribute and possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C.§ 924(c). (Doc. No. 18, Presentence Report ¶¶ 1, 4). On two separate occasions in January 2016, law enforcement officers conducted controlled buys of an ounce of methamphetamine from Defendant at his residence. *Id.* at 4. Later, officers executed a search warrant at the defendant's residence and found a handgun and over $16,000 in cash. *Id.* During a post-*Miranda* interview, Defendant admitted trafficking three to five ounces of methamphetamine per week from February 2015 to May 2015. *Id.* He also admitted trafficking 16 ounces of methamphetamine per week

from May 2015 until his arrest on January 16, 2016. *Id.* In total, Defendant's Presentence Report found him accountable for trafficking approximately 18 kilograms of methamphetamine resulting in a base offense level of 36. *Id.* at 4-5. He was sentenced to 121 months imprisonment plus five years of supervised release. (Doc. No. 22). Unfortunately, this was Defendant's second federal drug case. In 2003, the grand jury indicted him as part of a seven-year, fifteen defendant conspiracy to distribute cocaine and cocaine base. (Doc. No. 18, at 8). In that case, he was responsible for trafficking between two and three-and-a-half kilograms of cocaine. *Id.* The Court sentenced him to 37 months in prison in that case. *Id.*

Defendant is a 51-year-old male confined at FCI Petersburg Low, a minimum-security federal corrections institution in Virginia, with a projected release date of September 15, 2024. Defendant states that he suffers from "chronic conditions of cardiovascular and diabetic needs." According to his Presentence Report, he suffers from high blood pressure and diabetes and had a heart attack at age 24. (Doc. No. 1, ¶ 59). Defendant did file some medical records with his motion which indicate that he has Type 2 diabetes, is obese, has high blood pressure and high cholesterol. (Doc. No. 38).

FCI Petersburg Low currently has 70 inmates and 3 staff COVID-19 cases. There have been no inmate deaths nor staff deaths and 70 inmates and 5 staff have recovered. *See* Federal Bureau of Prisons, *COVID-19 Cases,* at https://www.bop.gov/coronavirus/ (last accessed on 9/16/2020).

Defendant submitted a request for reduction in sentence to BOP which was received by the warden on May 1, 2020. (Doc. No. 37, at 2). On May 12, 2020, the warden denied the request because Defendant does "not meet the criteria for a reduction in sentence based on a debilitating medical condition or the death or incapacitation of your spouse." *Id.* On May 6, 2020, Defendant filed a motion for compassionate release based on 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 35). On

May 13, 2020, this Court denied the motion, without prejudice, because Defendant had not shown that he had exhausted his administrative remedies within BOP. (Doc. No. 36). Defendant filed another motion with this Court seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on his health concerns and the number of positive cases at FCI Petersburg Low. (Doc. No. 37). He asks the Court to reconsider his motion for compassionate release. *Id.* The Government filed a response in opposition on September 10, 2020 (Doc. No. 41) and filed a copy of Defendant's medical records under seal. (Doc. No. 43).

## II. LEGAL STANDARD

By statute, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of the exceptions to this general rule is a motion for compassionate release. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.—**The Court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). A defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See, e.g.*, *United States v. Ebbers*, -- F. Supp. 3d --, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

The United States Sentencing Guidelines do not specifically contain a policy statement addressing motions for reductions in terms of imprisonment that are filed by an inmate. However, U.S.S.G. § 1B1.13 ("the Policy Statement") addresses motions for reductions in terms of imprisonment that are filed by the Director of the Bureau of Prisons (BOP). The Policy Statement largely mirrors the language of 18 U.S.C. § 3582(c)(1)(A) but includes a directive that the court determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). In determining whether a defendant is a danger to the safety of any other person or to the community, the Court must consider the following statutory factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the [defendant];
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

If the Court finds the defendant is not a danger to the safety of any other person or the community, the Policy Statement directs the Court to consider a variety of circumstances in determining whether extraordinary and compelling reasons justify a sentence reduction. U.S.S.G. § 1B1.13(2) App. Note 1. Specifically, the Court should consider whether any of the following circumstances exist: (1) "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" although a specific prognosis of life expectancy is not required; (2) the defendant is: "suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (3) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; (4) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children"; (5) "[t]he incapacitation of the defendant's spouse or registered partner"; or (6) "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" set forth in the prior factors. *Id.*

While courts agree that the Policy Statement and Application Notes set forth above apply to motions filed by the Director of the BOP, courts differ on whether the Policy Statement is binding on motions filed by the inmate. *See, e.g.*, *United States v.* Lynn, No. 89-0071-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019) (binding); *United States v. Beck*, 425 F. Supp. 3d 573, 579

(M.D.N.C. 2019) (not binding). "The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants." *Beck*, 425 F. Supp. 3d at 579. Accordingly, the majority of courts do not find the Policy Statement binding. Even so, the courts that find that the Policy Statement does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction still look to the old policy statement as it provides helpful guidance.

### III. DISCUSSION

*A. Exhaustion of Administrative Remedies*

A prisoner may bring a motion for compassionate release before the court only if he "has fully exhausted all administrative rights to appeal a failure" of the BOP to bring a motion on his behalf or if 30 days have passed since the warden received his request, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Although unclear whether Defendant has fully exhausted his remedies under the compassionate release statute, the Government does not argue that Defendant's motion should be denied for failure to exhaust his administrative remedies. Because the Government did not raise the issue of exhaustion, the Court deems that it has waived the defense. Accordingly, the Court will proceed to address the merits of Defendant's motion.

*B. Policy Statements*

Despite the lack of a policy statement clearly applicable to motions for compassionate release filed by defendants, the Court is guided by the general precepts of the Policy Statement in U.S.S.G. § 1B1.13. The Court finds it is not restrained by the Policy Statement in U.S.S.G. § 1B1.13 and is free to consider the COVID-19 pandemic, combined with other relevant circumstances, regardless of whether it falls within one of the existing categories in the U.S.S.G. § 1B1.13 commentary. A

discussion of the 3553(a) factors below will adequately address concerns outlined in the Policy Statement.

   C.  *Extraordinary and Compelling Reasons*

Defendant asserts that he suffers from medical conditions that make him particularly susceptible to complications from COVID-19. A review of his medical records shows that Defendant suffers from Type 1 diabetes, Type 2 diabetes, obesity, high cholesterol and high blood pressure. (Doc. No. 43, at 1, 5, 14, 42-50, 103). Medical providers have prescribed a variety of medications to treat these conditions. *See id.* at 47-48, 99-100, 103. The Defendant's medical conditions appear to be well-managed in BOP. The Court agrees with the Government that it does not need to address whether there are extraordinary and compelling reasons because a sentence reduction is not warranted in light of the danger Defendant poses to the community and other relevant § 3553(a) factors, as discussed below.

   D.  *Section 3553(a) Factors*

At Defendant's sentencing, the Court considered each of the Section 3553(a) factors and determined that Defendant's conduct warranted a custodial sentence. In determining whether a reduced sentence is appropriate, the Court must again undertake such an analysis to determine that Defendant's sentence is "sufficient, but not greater than necessary," to achieve the goals of sentencing. 18 U.S.C. § 3553(a). The Section 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed"; (3) "the kinds of sentences available"; (4) the sentencing guidelines; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." Id.

Regarding the nature and circumstances of the offense, Defendant's conviction was for a drug trafficking conspiracy that found him accountable for trafficking approximately 18 kilograms of methamphetamine. (Doc. No. 18, at 4). He is a prolific dealer of highly dangerous narcotics, whose prior federal conviction and prison sentence for drug trafficking did not deter him in this case, where he continued to deal narcotics while armed. The nature and circumstances of Defendant's offense weigh in favor of serving his full term of imprisonment.

As mentioned earlier, Defendant's conduct in this case was not an aberration as this is his second federal drug conviction. In 2003, the grand jury indicted him as part of a seven-year, fifteen defendant conspiracy to distribute cocaine and cocaine base. *Id.* at 8. In that case, he was responsible for trafficking between two and three-and-a-half kilograms of cocaine. *Id.* The Court sentenced him to 37 months in prison in that case. *Id.* The Court is of the firm opinion that a custodial sentence continues to be necessary to deter Defendant from future criminal conduct. With a projected release date of September 15, 2024, Defendant still has a large portion of his sentence remaining to be served. Reducing his sentence would undermine the statutory goals of deterrence and promoting respect for the law.

Further, this history reflects a need to protect the public from further crimes of Defendant. There is often a correlation between drug trafficking and violence, as evidenced by Defendant's copious drug dealing while armed.

There is no doubt the elevated number of confirmed COVID-19 cases at Petersburg Low prompts concern. However, Defendant's need for medical care is just one factor that the Court must consider, and it appears that Defendant is receiving adequate medical care at his facility.

The Court in its discretion concludes that the Section 3553(a) factors do not weigh in favor of Defendant's request for compassionate release. Courts have consistently denied compassionate

release for defendants with similar offenses and criminal records, even when they, like Defendant, presented CDC risk factors. *See e.g., United States v. Vasquez,* 2020 WL 5038006 (S.D.N.Y. Aug. 26, 2020) (defendant suffers from diabetes and other serious conditions, and has served 63% of 180-month sentence; relief is denied because he committed serious drug crimes while on parole for previous drug offenses); *United States v. Whitner,* 2020 WL 4431570, at *3 (W.D. Pa. July 31, 2020) (the defendant is at risk due to diabetes and obesity, but he committed a serious drug trafficking offense, had a prior conviction for drug trafficking and has an extensive criminal history); *United States v. Mack,* 2020 WL 4012837 (N.D. Ohio July 16, 2020) (inmate at FCI Elkton (where there was large outbreak) has diabetes, but has over two years remaining on 87-month sentence, and the defendant was involved in a conspiracy to distribute methamphetamine, and has a history of minor offenses and substance abuse; there is a "serious" possibility he will recidivate, and relief is denied); *United States v. Ikehara,* 2020 WL 3065104 (D. Haw. June 9, 2020) (defendant has 39 months remaining on 100-month drug sentence, and has lengthy criminal record for myriad offenses; relief denied notwithstanding coronary artery disease, heart disease, hypertension, hyperlipidemia, and Type 2 diabetes).

## IV. ORDER

**IT IS THEREFORE ORDERED** that Defendant's *pro se* Motion to Reconsider Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018, (Doc. No. 37), is **DENIED**.

**SO ORDERED.**

Signed: September 16, 2020

Kenneth D. Bell
United States District Judge